IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
-/Greenbelt Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PARKING MANAGEMENT, INC. ) | Case No. 20-15026-TJC |
| ) | Chapter 11 (Subchapter V) |
| Debtor ) | |

## DECLARATION OF KINGDON GOULD III
## IN SUPPORTOF PLAN CONFIRMATION

I, Kingdon Gould III, hereby declare under penalty of perjury:

1. I am the President and a Director of Parking Management, Inc (the "Debtor" or "PMI").

2. In my capacity as President and Director of PMI, I am familiar with the Debtor's operations and day-to-day business affairs.

3. All facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of the Debtor's senior management and professional advisors, my review of relevant documents or my opinion, based upon my experience and knowledge of the Debtor's operations and financial condition.

4. On May 7, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Maryland (this "Court").

5. The Debtor commenced the Chapter 11 Case to preserve and maximize PMI's enterprise value for the benefit of its stakeholders in the face of the ongoing Covid-19 pandemic and to adjust its operational footprint to more efficiently service the Washington, D.C., Baltimore, MD and Northern Virginia areas in the face of an ever-growing shift from personal vehicle transportation (and parking) to public transportation, ride-sharing services, and remote working.

6. Since the Petition Date, the Debtor has continued to operate its business.

7. As of April 30, 2020, PMI leased or managed approximately 100 parking facilities throughout the Northern Virginia, Washington, D.C. and Baltimore, MD metropolitan areas, and employed 191 employees. The Debtor predominantly specializes in mixed-use properties and has experience in leasing and managing all levels of commercial and residential parking operations. The Debtor employs two basic structures for its parking operations. Under the first structure, the Debtor leases a parking lot from a property owner, operates the parking facility, and pays rent to the owner. Under the second structure, the Debtor manages a parking facility for the property owner pursuant to a management agreement, and receives a management fee as compensation for doing so. Of the 100 parking facilities operated by PMI, 42 were operated pursuant to leases and 58 pursuant to management agreements.

8. Of the 100 parking facilities operated by PMI pursuant to leases or management contracts, a Gould entity has a majority direct or indirect interest in only 8 of the lease/management contract counterparties.

9. Since the Petition Date, all of the Debtor's lease/contract assumption and rejection decisions were made based solely on the Debtor's business judgment as to what was in the economic and strategic interest of the Debtor and its estate.

10. All of the contract terms included in any management contract or lease in which a Gould related entity has an interest reflect and are consistent with market terms.

11. The revenues from management contracts and leases in which any Gould entity has an interest as a landlord/owner are crucial to the Debtor's ongoing operations. Without such revenues, the Debtor's continued operation as a going concern would be jeopardized.

12. <u>Exhibit A</u> attached to the Debtor's Amended Plan of Reorganization (the "Plan") describes, among other things, the history of the Debtor, the business, the capital structure and the reason a Chapter 11 petition was filed.

13. The Plan designates two classes of Claims and Equity Interests. The Claims and Equity Interests placed in each class are substantially similar to other Claims or Equity Interests, as the case may be, in each such class.

14. Valid business, factual and legal reasons exist for separately classifying the classes of Claims and Equity Interests created under the Plan.

15. The Plan designates Class 1 unsecured creditors as impaired and specifies the treatment of Claims in that class under the Plan.

16. The Plan specifies that Class 2 equity is unimpaired under the Plan.

17. The Plan provides that the Debtor will deliver all net operating income for payment to the unsecured creditors *pro rata* for thirty six months.

18. The Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective class.

19. Upon confirmation, the Debtor will be managed by the same management team: I will continue as President; Stephen J. Yetso as CFO and James H. Blondell as General Counsel. Upon confirmation, the Debtor's directors will be me, Steve Yetso and James Blondell. There may be subsequent changes to senior management and the Board at some time in the future.

20. I understand that the Plan complies with the applicable provisions of Title 11.

21. The Debtor, the Plan proponent, has complied with the applicable provisions of Title 11.

22. The Debtor has proposed the Plan in good faith and not by any means forbidden by law.

23. Allowed Administrative expenses will be paid in full under the plan.

24. The Plan is not likely to be followed by further reorganization or liquidation.

25. The Debtor had no pre-bankruptcy or post-bankruptcy program in place to pay "retiree benefits."

26. There are no transfers of property contemplated under the Plan.

27. Out of 46 creditors who voted on the Debtor's Plan, 44 voted to accept the Plan. Of those 44 creditors who voted to accept the Plan, 26 have no Gould-ownership whatsoever. Another 5 creditors who voted to accept the Plan are entities in which a Gould person or entity has a minority, non-controlling interest. Thus, the Plan was overwhelmingly accepted by creditors that are independent of and not controlled by any insider or affiliate of the Debtor.

> Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.
>
> /s/ Kingdon Gould III
> Kingdon Gould III
> President

Dated: November 1, 2020